# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2020AP1582 |

| | |
|---|---|
| COMPLETE TITLE: | Beatriz Banuelos,<br>        Plaintiff-Appellant,<br>    v.<br>University of Wisconsin Hospitals and Clinics<br>Authority,<br>        Defendant-Respondent-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 399 Wis. 2d 568, 966 N.W.2d 78
PDC No: 2021 WI App 70 - Published

| | |
|---|---|
| OPINION FILED: | April 4, 2023 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | November 1, 2022 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Dane |
|   JUDGE: | Juan B. Colas |

JUSTICES:
ANN WALSH BRADLEY, J., delivered the majority opinion of the Court, in which DALLET, HAGEDORN, and KAROFSKY, JJ., joined. ROGGENSACK, J., filed a dissenting opinion. REBECCA GRASSL BRADLEY, J., filed a dissenting opinion, in which ZIEGLER, C.J., and ROGGENSACK, J., joined.

NOT PARTICIPATING:

ATTORNEYS:

For the defendant-respondent-petitioner, there were briefs filed by *Daniel A. Manna, Jay P. Lefkowitz, P.C., Gilad Bendheim, Kelsey Davis,* and *Gass Turek LLC,* Milwaukee, and *Kirkland & Ellis LLP,* New York City. There was an oral argument by *Jay P. Lefkowitz, P.C.*

For the plaintiff-appellant, there was a brief filed by *Jesse B. Blocher, Peter M. Young, Corey G. Lorenz,* and *Habush, Habush, & Rottier, S.C.,* Waukesha. There was an oral argument by *Jesse B. Blocher.*

An amicus curiae brief was filed by *Daniel E. Conley, Matthew J. Splitek, Alexandra W. Shortridge,* and *Quarles & Brady LLP,* Milwaukee, for Aurora Health Care, Inc.

An amicus curiae brief was filed by *Scott E. Rosenow* and *WMC Litigation Center,* Madison, for the Wisconsin Civil Justice Council, Inc.

An amicus curiae brief was filed by *Brett A. Eckstein, Edward E. Robinson, Brian D. Anderson,* and *Cannon & Dunphy, S.C.,* Brookfield, and *Everson, Whitney, Everson & Brehm, S.C.,* Green Bay, for the Wisconsin Association for Justice and Wisconsin Defense Counsel.

An amicus curiae brief was filed by *Sara J. MacCarthy, Stephane P. Fabus, Heather D. Mogden,* and *Hall, Render, Killian, Heath & Lyman, P.C.,* Milwaukee, for the Wisconsin Hospital Association, Inc., the Wisconsin Medical Society, Inc., the Wisconsin Dental Association, Inc., LeadingAge Wisconsin, Inc., the Rural Wisconsin Health Cooperative, the Wisconsin Health Care Association/Wisconsin Center for Assisted Living, and the Wisconsin Health Information Management Association, Inc.

An amicus curiae brief was filed by *Susan E. Lovern, Christopher E. Avallone,* and *von Briesen & Roper, S.C.,* Milwaukee, for the Association of Health Information Outsourcing Services.

No. 2020AP1582
(L.C. No. 2020CV903)

STATE OF WISCONSIN : IN SUPREME COURT

Beatriz Banuelos,

        Plaintiff-Appellant,

   v.

University of Wisconsin Hospitals and Clinics
Authority,

        Defendant-Respondent-Petitioner.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

**FILED**

**APR 4, 2023**

Sheila T. Reiff
Clerk of Supreme Court

ANN WALSH BRADLEY, J., delivered the majority opinion of the Court, in which DALLET, HAGEDORN, and KAROFSKY, JJ., joined. ROGGENSACK, J., filed a dissenting opinion. REBECCA GRASSL BRADLEY, J., filed a dissenting opinion, in which ZIEGLER, C.J., and ROGGENSACK, J., joined.

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 ANN WALSH BRADLEY, J. The petitioner, University of Wisconsin Hospitals and Clinics Authority (UW Hospitals), seeks review of a published court of appeals opinion reversing and remanding the circuit court's dismissal of Beatriz Banuelos's

complaint for failure to state a claim upon which relief can be granted.[1] Banuelos contends that she was unlawfully charged per page fees for copies of her medical records which were provided in an electronic format. The court of appeals agreed and determined that Wis. Stat. § 146.83(3f) (2017-18)[2] does not permit a health care provider to charge fees for providing copies of patient health care records in an electronic format.

¶2 UW Hospitals argues, in essence, that the court of appeals erred because Wis. Stat. § 146.83(3f) is silent as to fees for electronic copies of patient health care records. Accordingly, it does not prohibit a health care provider charging fees for providing such copies. And thus, Banuelos's complaint alleging unlawful and excess charges fails to state a claim upon which relief can be granted.[3]

¶3 Banuelos offers a different interpretation of the statute's silence. She asserts that because fees for electronic copies are not enumerated in the statutory list of permissible fees that a health care provider may charge, the fees charged here are unlawful under state law. As a result, Banuelos maintains that her complaint survives the motion to dismiss.

---

[1] Banuelos v. Univ. of Wis. Hosps. and Clinics Auth., 2021 WI App 70, 399 Wis. 2d 568, 966 N.W.2d 78 (reversing and remanding the order of the circuit court for Dane County, Juan Colas, Judge).

[2] All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

[3] See Wis. Stat. § 802.06(2)(a)6.

¶4 We conclude that although Wis. Stat. § 146.83(3f) provides for the imposition of fees for copies of medical records in certain formats, it does not permit health care providers to charge fees for patient records in an electronic format. Therefore, we determine that Banuelos's complaint states a claim upon which relief can be granted.

¶5 Accordingly, we affirm the decision of the court of appeals.

I

¶6 The essential facts set forth below are taken from Banuelos's complaint. Because we are reviewing the circuit court's determination of a motion to dismiss for failure to state a claim, we must assume that these facts are true. Yacht Club at Sister Bay Condo. Ass'n, Inc. v. Village of Sister Bay, 2019 WI 4, ¶4, 385 Wis. 2d 158, 922 N.W.2d 95.

¶7 Banuelos signed and submitted a request to UW Hospitals for copies of her medical records in electronic format.[4] The request directed and authorized that the records be transmitted to her attorneys.

---

[4] Banuelos requested that her records be provided electronically pursuant to the Health Information Technology for Economic and Clinical Health (HITECH) Act, 42 U.S.C. § 17935(e)(1) and 45 C.F.R. § 164.524(c).

(continued)

¶8 UW Hospitals complied with the request through its service provider, Ciox, and transmitted copies of Banuelos's patient health care records electronically to her attorneys, along with an invoice for $109.96.[5] The requested payment for

---

As described by UW Hospitals, "[t]hat federal statutory regime authorizes (in certain circumstances) a patient to request that copies of electronic health records be provided in an electronic format to the patient, or to a designated third party, such as her personal injury attorney." "[I]n the case that a covered entity uses or maintains an electronic health record . . . the individual shall have a right to obtain from such covered entity a copy of such information in an electronic format and . . . to direct the covered entity to transmit such copy directly to an entity or person designated by the individual," 42 U.S.C. § 17935(e)(1), which is mandatory "if it is readily producible in such form and format." 45 C.F.R. § 164.524(c).

There is no issue of federal law that has been presented to this court to address.

[5] Justice Roggensack's dissent assumes the role of an advocate by deciding this case on an argument it raises sua sponte, and then, based on that never-before-raised argument, it attempts to transform the motion in this case from a motion to dismiss (which it is) into a motion for summary judgment (which it is not).

In this motion to dismiss, we accept the facts alleged in Banuelos's complaint as true. UW Hospitals is the sole defendant here and the complaint avers wrongdoing against it alone. Nevertheless, the dissent attempts to read into the complaint wrongdoing by Ciox, thereby creating factual issues regarding who did what, and whose acts caused the harm.

(continued)

4

copies included "per page" charges of $1.14 for the first 25 pages, $0.86 for the next 25 pages, $0.56 for the next 50 pages, and $0.34 for an additional 94 pages, which is consistent with

---

Justice Roggensack's dissent's "read in" is accomplished only by omitting an essential part of the complaint's averments. Citing to paragraphs 16 and 17 and Exhibit C of the complaint, the dissent describes Banuelos's complaint, stating "her Complaint alleges that Ciox Health, LLC (Ciox), who is not a health care provider, supplied the health care records and charged $109.96." Dissent, ¶47. What the dissent omits is that the complaint actually alleges that the supplying of the records and the charges incurred were done at the instance of UW Hospitals, with Ciox as a conduit.

Paragraph 16 avers that "Defendant, through its business associate, Ciox, complied with the request and transmitted the medical records electronically to Habush Habush & Rottier S.C." Paragraph 17 avers, "The response from defendant, through its business associate, Ciox, included an invoice requesting payment of $109.96."

Thus, all the complaint alleges with respect to Banuelos's specific case is that UW Hospitals "through its business associate, Ciox, complied with the request and transmitted the medical records electronically . . . [and] included an invoice requesting payment of $109.96."

In order to reach Justice Roggensack's dissent's conclusion, further factual development would be necessary to establish Ciox's role, which typically would be the subject of a summary judgment motion, not a motion to dismiss. For summary judgment methodology see Wis. Stat. § 802.08.

Perhaps the most devastating response to the dissent is that UW Hospitals, in its reply brief, specially discarded the dissent's newly embraced argument, deeming it "irrelevant." See infra, ¶18 n.8.

the maximum rate for paper copies of patient health care records permitted under Wis. Stat. § 146.83(3f).[6]

¶9 Banuelos filed suit, seeking declaratory and injunctive relief, as well as damages. Her complaint alleged that because the copies of electronic patient health care records she requested do not fall into one of the enumerated categories contained within Wis. Stat. § 146.83(3f), none of the charges permitted under § 146.83(3f) applies to her electronic records request. Accordingly, she argued that UW Hospital's charge of $109.96 was in violation of state law.

¶10 In response, UW Hospitals filed a motion to dismiss, alleging in its supporting brief that Banuelos's claims were "fundamentally flawed" with respect to her interpretation of Wis. Stat. § 146.83(3f).[7] The circuit court granted the motion. It concluded that "the legislature has failed to cover the situation where records are requested in electronic form and provided in electronic form. And therefore, the charge that was made or demanded is not a violation." It reasoned that because the fee UW Hospitals charged was not a violation of Wisconsin

---

[6] These numbers deviate from those listed in Wis. Stat. § 146.83(3f)(b)1. due to the operation of § 146.83(3f)(c)2., which provides for adjustments in the amounts specified based on changes in the consumer price index.

[7] In its motion to dismiss, UW Hospitals did not specify under which paragraph of Wis. Stat. § 802.06(2) it sought dismissal. The circuit court construed the motion as a motion to dismiss for failure to state a claim, and we will do the same.

law, Banuelos could not prevail in this case and dismissal of the complaint was warranted.

¶11 Banuelos appealed, and the court of appeals reversed the circuit court's order. Banuelos v. Univ. of Wis. Hosps. and Clinics Auth., 2021 WI App 70, 399 Wis. 2d 568, 966 N.W.2d 78. The court of appeals conducted a plain meaning analysis of Wis. Stat. § 146.83(3f) and determined that the statute plainly and unambiguously permits a health care provider to charge fees for the formats enumerated in the statute and only those formats. Because fees for copies of records in an electronic format are not enumerated, the court of appeals concluded that such fees cannot lawfully be charged. UW Hospitals petitioned for this court's review.

II

¶12 We are called upon to review the court of appeals' decision reversing and remanding the circuit court's dismissal of Banuelos's complaint for failure to state a claim. In order to withstand a motion to dismiss for failure to state a claim, the complaint must plead facts, which if true, would entitle the plaintiff to relief. Wis. Stat. § 802.02(1)(a); Data Key Partners v. Permira Advisers LLC, 2014 WI 86, ¶21, 356 Wis. 2d 665, 849 N.W.2d 693. Whether a complaint states a claim upon which relief can be granted is a question of law this court reviews independently of the determinations rendered by the circuit court and court of appeals. Hinrichs v. DOW Chem. Co., 2020 WI 2, ¶23, 389 Wis. 2d 669, 937 N.W.2d 37.

7

¶13 Our review also requires us to interpret several Wisconsin statutes. Statutory interpretation is likewise a question of law that we review independently of the determinations of the circuit court and court of appeals. Sw. Airlines Co. v. DOR, 2021 WI 54, ¶16, 397 Wis. 2d 431, 960 N.W.2d 384.

III

¶14 The sufficiency of the claims alleged in Banuelos's complaint depends upon our interpretation of Wis. Stat. § 146.83(3f). Interestingly, both parties embrace a plain meaning interpretation of the statute, but arrive at opposite conclusions.

¶15 In resolving the inquiry of whether Wis. Stat. § 146.83(3f) permits a fee to be charged for copies of health care records in electronic format, we are aided by some familiar tools of statutory interpretation. With those interpretative tools in hand, we examine first the text of § 146.83(3f). Next, we look to § 146.83(3f)'s statutory history. Finally, we address UW Hospitals' arguments advancing that the scope of § 146.83(3f) does not include electronic records.

A

¶16 The familiar tools of statutory interpretation provide guiding principles for our inquiry. "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." State ex rel. Kalal v. Cir. Ct. for Dane Cnty., 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. "We assume that the legislature's

8

intent is expressed in the statutory language." Id. "In construing or interpreting a statute the court is not at liberty to disregard the plain, clear words of the statute." Id., ¶46. If the text of the statute is plain and unambiguous, our inquiry stops there. Id., ¶45.

¶17 Statutory language is given its "common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Id. We interpret statutory language in context, "as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Id., ¶46. Language is also interpreted to avoid surplusage and to give reasonable effect to every word. Id. A review of statutory history is part of a plain meaning analysis. Richards v. Badger Mut. Ins. Co., 2008 WI 52, ¶22, 309 Wis. 2d 541, 749 N.W.2d 581.

B

¶18 In applying these principles, we look first to the text of Wis. Stat. § 146.83(3f). It contains two provisions important to our analysis. Paragraph (a) states:

> Except as provided in sub. (1f) or s. 51.30 or 146.82(2), if a person requests copies of a patient's health care records, provides informed consent, and pays the applicable fees under par. (b), the health care provider shall provide the person making the request copies of the requested records.

9

§ 146.83(3f)(a).[8]

¶19 This provision unambiguously outlines three requirements that a person requesting a copy of patient health care records must fulfill: (1) request copies, (2) provide informed consent, and (3) pay the applicable fee set forth in paragraph (b). Id. Once a person has met those three requirements, a health care provider "shall provide" the person with the requested copies. Id.; Heritage Farms, Inc. v. Markel Ins. Co. (Heritage Farms II), 2012 WI 26, ¶32, 339 Wis. 2d 125, 810 N.W.2d 465 ("[W]e presume that the word 'shall' is mandatory.").

¶20 The second provision important to our discussion is paragraph (b), which provides:

---

[8] As referenced above in footnote 5, Justice Roggensack's dissent produces a new argument on behalf of UW Hospitals, arguing that because Ciox is not a health care provider, it is not constrained by Wis. Stat. § 146.83(3f). Justice Roggensack's Dissent, ¶66. Neither party developed this argument in its brief, nor did this argument arise during oral arguments in this case. UW Hospitals, in fact, actually eschewed this argument in its reply brief, calling it "irrelevant" to this case:

> First, Banuelos's mud-slinging in relation to Ciox cannot have any bearing on this case. This court recently held that the fee restrictions in § 146.83(3f)(b) apply only to health care providers, not their vendors. See [Townsend v. ChartSwap, LLC, 2021 WI 86, ¶¶16—17, 399 Wis. 2d 599, 967 N.W.2d 21]. Accordingly, the statute is, and always has been, directed at Wisconsin health care providers, and whether or not a health care provider may choose to outsource its records collection processes is irrelevant.

10

Except as provided in sub. (1f), a health care provider may charge no more than the total of all of the following that apply for providing the copies requested under par. (a):

1. For paper copies: $1 per page for the first 25 pages; 75 cents per page for pages 26 to 50; 50 cents per page for pages 51 to 100; and 30 cents per page for pages 101 and above.

2. For microfiche or microfilm copies, $1.50 per page.

3. For a print of an X-ray, $10 per image.

4. If the requester is not the patient or a person authorized by the patient, for certification of copies, a single $8 charge.

5. If the requester is not the patient or a person authorized by the patient, a single retrieval fee of $20 for all copies requested.

6. Actual shipping costs and any applicable taxes.

Wis. Stat. § 146.83(3f)(b).

¶21 Paragraph (b) sets out the parameters of the third requirement, delineating maximum allowable fees that may be charged for patient health care records. Listed in the statute are three formats in which records can be provided and fees charged, and only three formats. For paper copies, the fee is a per page charge of $1 for the first 25 pages; 75 cents for pages 26-50; 50 cents for pages 51-100; and 30 cents for pages above 100. Id. Additionally, a health care provider is allowed to charge no more than $1.50 per page for microfiche or microfilm copies and $10 per image for x-ray prints. Id. Conspicuously missing is any reference to copies of "electronic records" or any substantially similar term.

11

¶22 The text of the statute sets forth that health care providers "may charge no more than the total of all of the following that apply for providing the copies requested." Id. That is, a health care provider may charge up to the rates prescribed in the statute for furnishing copies of paper records, microfiche or microfilm records, or x-rays. We observe that there is no provision in the text permitting the charge of fees for copies in formats for which the legislature did not expressly authorize a fee.

¶23 The court of appeals relied on a similar observation in reaching its conclusion that no fee may be charged for providing copies of patient health care records in an electronic format. Banuelos, 399 Wis. 2d 568, ¶15. It initially focused on the introductory language of paragraph (b), that a health care provider may "charge no more than the total of all of the following," to conclude that "para. (b) defines the total universe of fees that a provider may collect from a requester for the service of fulfilling a request for patient health care records under para. (a)." Id. "This means that the fees a health care provider is permitted to charge must be equal to or less than the total of whichever, if any, of the six fees enumerated in subds. (b)1.-6. that apply . . . ." Id.

¶24 We agree with the court of appeals that the plain text of Wis. Stat. § 146.83(3f) indicates that if the three requirements laid out in paragraph (a) are met, the healthcare provider must provide copies of the patient's health care records. We further agree with the court of appeals that the

12

statute does not permit charges for copies of electronic records because the statute does not enumerate electronic formats as one of the three formats for which a health care provider may charge a fee.

C

¶25 A review of the statutory history of Wis. Stat. § 146.83(3f) yields a similar result.  Statutory history refers to previously enacted versions of the statute which have subsequently been amended by the legislature.[9]  Heritage Farms, Inc. v. Markel Ins. Co. (Heritage Farms I), 2009 WI 27, ¶15 n.10, 316 Wis. 2d 47, 762 N.W.2d 652.  Prior versions of a statute were enacted law and constitute an intrinsic source, part and parcel of a plain meaning interpretation.  Richards, 309 Wis. 2d 541, ¶22.

¶26 Prior to 2009, the relevant statutes did not mention electronic copies of medical records.  Wis. Stat. § 146.83(3m)(a) (2007-08).[10]  At the time, the statute governing

---

[9] Statutory history is distinct from legislative history, which "is extrinsic evidence of a law's meaning and becomes relevant only to confirm plain meaning or when a statute remains ambiguous even after 'the primary intrinsic analysis has been exhausted[.]'"  Brey v. State Farm Mut. Auto. Ins. Co., 2022 WI 7, ¶21, 400 Wis. 2d 417, 970 N.W.2d 1.

[10] Wis. Stat. § 146.83(3m)(a)(2007-08) states:

The department shall, by rule, prescribe fees that are based on an approximation of actual costs.  The fees, plus applicable tax, are the maximum amount that a health care provider may charge under sub. (1)(b) for duplicate patient health care records and under sub. (1)(c) for duplicate X-ray reports or the referral of

(continued)

13

access to patient health care records merely provided that the Wisconsin Department of Health Services (DHS) shall prescribe fees, based on actual costs, which constitute the maximum amount a health care provider may charge.  Id.

¶27 In 2009, the legislature took away DHS's broad authority to prescribe fees and instead set permissible fees by statute.  See 2009 Wis. Act 28, § 2433d.  The new statute, Wis. Stat. § 146.83(1f)(c)3m. (2009-10), referenced electronic copies, providing that "a health care provider may charge no more than the total of all of the following that apply for providing copies requested . . . For providing copies in digital or electronic format, a charge for all copies requested."  This language was mirrored in § 146.83(1h) (2009-10), which addressed

---

X-rays to another health care provider of the patient's choice.  The rule shall also permit the health care provider to charge for actual postage or other actual delivery costs.  In determining the approximation of actual costs for the purposes of this subsection, the department may consider all of the following factors:

1. Operating expenses, such as wages, rent, utilities, and duplication equipment and supplies.

2. The varying cost of retrieval of records, based on the different media on which the records are maintained.

3. The cost of separating requested patient health care records from those that are not requested.

4. The cost of duplicating requested patient health care records.

5. The impact on costs of advances in technology.

14

fees for a patient health care record request made by someone other than the patient themselves.  A new provision was also created, stating:

> Upon the request of the person requesting copies of patient health care records under sub. (1f) or (1h), the health care provider shall provide the copies in a digital or electronic format unless the health care provider's record system does not provide for the creation or transmission of records in a digital or electronic format, in which case the health care provider shall provide the person a written explanation for why the copies cannot be provided in a digital or electronic format.

2009 Wis. Act 28, § 2433h (creating § 146.83(1k)).

¶28  In 2011, subsequent to a change in federal law,[11] the Wisconsin Legislature repealed § 146.83(1f) and (1h) (2009-10) and created Wis. Stat. § 146.83(3f) as it is today, without specific reference to electronic records.  2011 Wis. Act 32, §§ 2649x-2663m.  Two key changes regarding what was formerly Wis. Stat. § 146.83(1f) took place.  First, the legislature deleted two charges that were previously permissible.  One now-deleted provision was § 146.83(1f)(c)3m. (2009-10), which as set forth above provided an allowable "charge" for the provision of electronic records.  The other deleted provision authorized a surcharge contingent on the timing of requested delivery.

---

[11] As part of the American Recovery and Reinvestment Act of 2009, federal law was enacted encouraging health care providers to adopt electronic health records, mandating that individuals may receive electronic copies and setting a fee limitation on such copies.  American Recovery and Reinvestment Act of 2009, H.R. 1, 111th Cong. § 13001(a) H.R. 1-112 (2009) (enacted).

§ 146.83(1f)(c)5. (2009-10). Second, the legislature added two permissible charges. Those charges, which still exist today, create an additional surcharge for a third-party requester, i.e., a requester who is not the patient or a person authorized by the patient. § 146.83(3f)(b)4-5.

¶29 Although Wisconsin statutes previously permitted a charge for the provision of electronic copies of patient health care records, that language has since been repealed. The legislature's chosen actions resulted in the comprehensive list of permitted fees a health care provider may charge for copies of patient health care records. We cannot interpret the subsequently amended statute to permit a charge for copies of electronic records, as doing so would require us to read language back into the statute that is no longer there. This we cannot do. See Milwaukee J. Sentinel v. City of Milwaukee, 2012 WI 65, ¶37, 341 Wis. 2d 607, 815 N.W.2d 367.

D

¶30 UW Hospitals challenges this plain meaning interpretation of the text of Wis. Stat. § 146.83(3f) and its statutory history by citing to surrounding statutes. Specifically, it looks to Wis. Stat. § 146.836, entitled "Applicability," and Wis. Stat. § 146.81(4), which defines "patient health care records," to argue that the scope of § 146.83(3f) does not cover electronic records.

¶31 It argues that a determination of whether the fee provision in paragraph (b) of Wis. Stat. § 146.83(3f) even applies depends on whether the records request initially

16

qualifies as a request pursuant to paragraph (a). UW Hospitals observes that nothing in paragraph (a) indicates that a request for patient health care records includes electronic records. It advances that such an omission was intentional because a nearby statute, Wis. Stat. § 146.836, unambiguously provides that only four statutory provisions apply to electronic records. Section 146.836 states:

> Sections 146.815, 146.82, 146.83(4) and 146.835[12] apply to all patient health care records, including those on which written, drawn, printed, spoken, visual, electromagnetic or digital information is recorded or preserved, regardless of physical form or characteristics.

According to UW Hospital, because § 146.83(3f) is not one of the four statutory provisions applicable to electronic records, the scope of paragraph (a) clearly does not include electronic records.

¶32 Next, UW Hospitals looks to the definition of "patient health care records" found in Wis. Stat. § 146.81(4) in an effort to further rebut the court of appeals' plain meaning interpretation of Wis. Stat. § 146.83(3f). The definition contained in § 146.81(4) in relevant part provides that

---

[12] The sections referred to in this statute all relate to the content and confidentiality of records. The titles in order of appearance in Wis. Stat. § 146.836 are as follows: "Contents of certain patient health care records;" "Confidentiality of patient health care records;" "Access to patient health care records" (specifying prohibited actions relating to records); and "Parents denied physical placement rights." Wis. Stat. §§ 146.815; 146.82; 146.83(4); 146.835.

17

"'[p]atient health care records' means all records related to the health of a patient prepared by or under the supervision of a health care provider . . . ." § 146.81(4). Relying on the statutory definition, the court of appeals determined that "'[p]atient health care records' means <u>all records</u> related to the health of a patient prepared by or under the supervision of a health care provider," and that "all" records "means all records," including electronic records. See <u>Banuelos</u>, 399 Wis. 2d 568, ¶12 n.4.

¶33 UW Hospitals argues that an examination of the plain text of the statutory definition reveals that it addresses the substance of the records and not their format. It explains that the records must "relate to the health of the patient" and be "prepared by or under the supervision of the health care provider," which are matters of substance. UW Hospitals thus reasons that the definition does not contemplate records in electronic format.

¶34 Additionally, according to UW Hospitals, to interpret the definition as applying to all formats would render superfluous the "Applicability" statute, Wis. Stat. § 146.836, given that it limits the applicability of electronic records formats to only four enumerated provisions. To explain briefly in the words of UW Hospitals, "[i]f 'patient health care records' included electronic records whenever that term appears, then there was no need for the legislature to specify" in the "Applicability" section that the definition of "patient health

care records" in the four listed provisions also applies to electronic records.

¶35  We are unpersuaded and address each argument in turn. To start, we conclude that Banuelos's request for electronic records was a request under Wis. Stat. § 146.83(3f)(a).  This conclusion is informed by the definition of "patient health care records."  In turning to the statutory definition of "patient health care record" in Wis. Stat. § 146.81(4) we make two important observations.  Initially, we observe the threshold language in § 146.81 indicates that the definitions listed in § 146.81 apply to "ss. 146.81 to 146.84."  § 146.81.  This range includes the statute at the center of our analysis, Wis. Stat. § 146.83.  We observe next that the legislature used the inclusive term, "all" in the definition of "patient health care record." Indeed, it is evident that "all records" means "all records." See Pfister v. Milwaukee Econ. Dev. Corp., 216 Wis. 2d 243, 270, 576 N.W.2d 554 (Ct. App. 1998) (concluding that "'all' means 'all'").

¶36  Thus under this definition, "patient health care record" means "all records," including electronic records. Because paragraph (a) regulates access to "patient health care records," Wis. Stat. § 146.83(3f)(a) encompasses requests for electronic records as well.  We resolve UW Hospitals' argument that paragraph (a) does not apply to electronic records due to the "Applicability" statute, Wis. Stat. § 146.836, in the same manner as its related argument that to interpret "patient health care records" as "all records," renders superfluous § 146.836.

19

¶37 These arguments fail for several reasons. First, they ignore the fact that Wis. Stat. § 146.83(3f) regulates access to "copies" of patient health care records, not the actual records. The text of Wis. Stat. § 146.836 "does not address the significance of the distinction between the reference to 'electronic records' in § 146.836 and the reference to 'copies of a patient's health care records' in Wis. Stat. § 146.83(3f)." Banuelos, 399 Wis. 2d 568, ¶39. UW Hospitals is not able to articulate any language in the "Applicability" section limiting "copies" to a particular format.

¶38 Second, UW Hospitals' interpretation of "patient health care record" as excluding electronic records for purposes of all but four statutory sections is unavailing because of the impact such an interpretation would have on other statutes discussing "patient health care records." For example, we look to Wis. Stat. § 146.819(1),[13] which governs a health care

---

[13] Wis. Stat. § 146.819(1) states:

Except as provided in sub. (4), any health care provider who ceases practice or business as a health care provider or the personal representative of a deceased health care provider who was an independent practitioner shall do one of the following for all patient health care records in the possession of the health care provider when the health care provider ceased business or practice or died:

(a) Provide for the maintenance of the patient health care records by a person who states, in writing, that the records will be maintained in compliance with ss. 146.81 to 146.835.

(continued)

provider's responsibility upon ceasing practice, including that such a provider must maintain, delete, or destroy patient health care records in their possession. UW Hospitals' interpretation suggests that § 146.819(1) requires that a former health care provider must maintain or destroy only physical patient health care records, as records in electronic format would be excluded from this statute's purview. Given the ubiquity of electronic record keeping, excluding electronic records from this statutory mandate because of an amorphous link to Wis. Stat. § 146.836 makes no sense. See also Wis. Stat. § 146.84 (excluding records in electronic format from a section imposing violations for actions taken in relation to handling related to "patient health care records" would likewise make no sense).

¶39 Third, the text of Wis. Stat. § 146.836 limits its applicability to four enumerated statutes, and ensures the confidentiality of "written, drawn, printed, spoken, visual" and electronic information. The enumerated statutes are Wis. Stat. § 146.815 (content of hospital records); Wis. Stat. § 146.82 (confidentiality of records and informed consent to access); Wis. Stat. § 146.83(4) (prohibiting certain actions regarding patient records); and Wis. Stat. § 146.835 (maintaining

---

(b) Provide for the deletion or destruction of the patient health care records.

(c) Provide for the maintenance of some of the patient health care records, as specified in par. (a), and for the deletion or destruction of some of the records, as specified in par. (b).

21

confidentiality from parents that are denied physical placement of a child). Nothing in the text of § 146.836 changes the definition of "patient health care records" as applied to Wis. Stat. § 146.83(3f), nor any other statute. If § 146.836 was intended to have the far reaching effect as espoused by UW Hospitals, one would expect it to be clearly reflected in the text.

¶40 Finally, we turn to UW Hospitals' remaining argument that the definition of "patient health care record" is one of substance and not format. This curious argument does not support the conclusion UW Hospitals would have us draw from it to exclude electronic records from the definition. Regardless of whether it relates to the "substance" of the record or its "format," the legislature chose to define "patient health care records" as "all records." State ex rel. Girouard v. Cir. Ct. for Jackson Cnty., 155 Wis. 2d 148, 156, 454 N.W.2d 792 (1990) ("When a word used in a statute is defined in the statutes, that definition is controlling.").

¶41 Thus we conclude that Wis. Stat. § 146.836 does not serve as an omnibus statute, intending to supersede in scope all statutes that reference health care records. Rather, the four enumerated statutes cover matters of content and confidentiality, and there is nothing in the text to indicate that its circumference was intended to expand beyond that narrow field. It neither limits the scope of Wis. Stat. § 146.83(3f)(a) nor is it rendered superfluous by the definition of "patient health care records" in Wis. Stat. § 146.81(4). We

22

instead remain wedded to the statutory definition of "patient health care records," determining that "all" indeed does mean "all."

¶42 At times it appears as though UW Hospitals' arguments endeavor to place this court in the very midst of an important policy decision. It frames the essence of our inquiry as: "At bottom, this case asks who should bear the cost of supporting these commercial entities' profit making: the Wisconsin health care system (and ultimately, all Wisconsin patients) or the commercial entities themselves."

¶43 It restates the question before the court as relating to how the court should apportion the costs involved: "The question here . . . relates to how the cost of providing electronic records access should be apportioned as between the health care provider and commercial third parties . . . who choose, for their own business reasons, to obtain records directly from health care providers rather than from the patients who are their customers."

¶44 We disagree. At bottom, our inquiry is neither about "who should bear the cost of supporting these commercial entities' profit making" nor is the question before us "how the cost of providing electronic records" should be apportioned. Rather, our task is to discern the meaning of Wis. Stat. § 146.83(3f), and this we have done in the discussion above. "It goes without saying, of course, that the legislature may amend the fee provisions. Policy decisions are left to the legislature." Milwaukee J. Sentinel, 341 Wis. 2d 607, ¶37.

23

¶45 In sum, we conclude that Wis. Stat. § 146.83(3f) does not permit health care providers to charge fees for electronic records. Therefore, Banuelos's complaint states a claim upon which relief can be granted that UW Hospital's charge of $109.96 was a violation of Wisconsin law. Accordingly, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶46 PATIENCE DRAKE ROGGENSACK, J. *(dissenting).* We review a motion to dismiss. According to the majority opinion, we are asked to determine whether Wis. Stat. § 146.83(3f)(b)'s permission to health care providers to charge for copies of health care records that are provided in paper, microfilm and X-ray formats is also a prohibition against health care providers charging for copies of health care records in electronic format.[1]

¶47 I conclude that Beatriz Banuelos's Complaint fails to state a claim against University of Wisconsin Hospital and Clinics Authority ("UW Hospital") because her Complaint alleges that Ciox Health, LLC (Ciox), who is not a health care provider, supplied the health care records and charged $109.96 for them, payable to Ciox.[2] Wisconsin Stat. § 146.83(3f)(b), invoked and relied on by the majority opinion, does not regulate persons who are not health care providers. Townsend v. ChartSwap, LLC, 2021 WI 86, ¶14, 399 Wis. 2d 599, 967 N.W.2d 21 (explaining that "[b]y the terms of the statute itself, these restrictions apply only to health care providers"); Smith v. RecordQuest, LLC, 380 F. Supp. 3d 838, 842 (E.D. Wis. 2019) (explaining that "[t]he statute does not impose liability on a person who is not a health care provider but who responds to records requests on behalf of a health care provider").[3]

---

[1] Majority op., ¶4.

[2] Complaint, ¶¶16, 17; Banuelos – Exhibit 3 (attached to the Complaint and to this dissent).

[3] The Seventh Circuit reversed Smith v. RecordQuest, LLC,

(continued)

¶48 Permitting a claim against UW Hospital for charges made by Ciox for the provision of health care records is not addressed in Wis. Stat. § 146.83(3f)(b).[4] Whether to permit a claim against a health care provider for charges made by a third party for the provision of health care records, whether the third party is denominated a "conduit," a "business associate" or something else, is a policy choice better left to the legislature. The charges the Complaint alleges Ciox made here are not contrary to the plain meaning of § 146.83(3f)(b); therefore, the Complaint fails to state a claim against UW Hospital and must be dismissed.

¶49 The majority opinion ignores material facts that are alleged in Banuelos's Complaint and the effect of Townsend on

---

380 F. Supp 3d 838 (E.D. Wis. 2019) in Smith v. RecordQuest, LLC, 989 F.3d 513 (7th Cir. 2021). However, in reversing the Eastern District of Wisconsin to determine that Wis. Stat. § 146.83(3f)(b) applied to a "health care records company," the Seventh Circuit relied on Townsend v. ChartSwap, LLC, 2020 WI App 79, 395 Wis. 2d 229, 952 N.W.2d 831. Just months after the Seventh Circuit's decision, this court reversed the Wisconsin Court of Appeals in Townsend v. ChartSwap, LLC, 2021 WI 86, 399 Wis. 2 599, 967 N.W.2d 21. Effectively, the Eastern District of Wisconsin's determinations in Smith are consistent with Wisconsin law. See also id., 399 Wis. 2d 599, ¶¶9 n.6, 32.

[4] The majority alleges that Ciox is a "conduit" and a "business associate" of UW Hospital. Majority op., ¶8 n.5. That may be true, but that does not make Ciox a health care provider according to the definition of health care provider in Wis. Stat. § 146.81(1). And, only health care providers are restricted by Wis. Stat. § 146.83(3f)(b). Townsend v. ChartSwap, LLC, 2021 WI 86, ¶14, 399 Wis. 2d 599, 967 N.W.2d 21.

the pending motion to dismiss, given those facts. Accordingly, I respectfully dissent.[5]

## I. BACKGROUND

¶50 Wisconsin Stat. § 146.83(3f) is central to our review. It was enacted in 2011 Wis. Act 32 § 9321(4), effective July 1, 2011.

¶51 Banuelos alleges she requested her health care records be sent to her attorneys in electronic format. She alleges that the records were provided, but that she was charged fees in excess of that permitted by Wis. Stat. § 146.83(3f)(b). UW Hospital moved to dismiss. The circuit court granted UW Hospital's motion because charges for electronic documents are not mentioned in § 146.83(3f)(b) and therefore, the charge for electronic copies was not regulated by subsec. (3f)(b).

¶52 The court of appeals reversed, concluding that it is "self-evident" that because there is no listing of "applicable fees under par. (b)" for electronic copies, the records must still be provided. However, no fees may be charged.[6]

¶53 Rather than reviewing facts alleged in Banuelos's complaint, as a motion to dismiss requires, the majority opinion slides over that obligation. Instead, it interprets Wis. Stat. § 146.83(3f)(b)'s silence in regard to electronic records as a

---

[5] When on a motion to dismiss a majority opinion ignores the facts alleged in the complaint, it invites a motion for reconsideration.

[6] Banuelos v. Univ. of Wis. Hosps. and Clinics Auth., 2021 WI App 70, ¶¶13, 14, 399 Wis. 2d 568, 966 N.W.2d 78.

prohibition on charging for those records, notwithstanding that UW Hospital charged Banuelos's lawyers nothing for health care records that Ciox provided.[7]

## II. DISCUSSION

### A. Standard of Review

¶54 The dispute before us presents as a motion to dismiss. Whether facts alleged in a complaint are sufficient to state a claim for relief is a question of law for our independent review. Townsend, 399 Wis. 2d 599, ¶10. This dispute also requires us to interpret and apply statutes. These are additional questions of law that we independently decide. Marder v. Bd. of Regents of Univ. of Wis. Sys., 2005 WI 159, ¶19, 286 Wis. 2d 252, 706 N.W.2d 110.

### B. Motion to Dismiss

### 1. Legal Principles

¶55 A motion to dismiss tests the legal sufficiency of the complaint. Townsend, 399 Wis. 2d 599, ¶10. In order to survive a motion to dismiss, a complaint must allege facts, which if true, would entitle the pleader to relief. Data Key Partners v. Permira Advisers LLC, 2014 WI 86, ¶21, 356 Wis. 2d 665, 849 N.W.2d 693. Although for purposes of the pending motion, we accept as true all facts well-pleaded and reasonable inferences therefrom, we cannot add facts to a complaint. Townsend, 399 Wis. 2d 599, ¶10. In addition, we give no deference to a

---

[7] Majority op., ¶1.

complaint's legal conclusions. Id. Accordingly, I begin with the factual allegations stated in Banuelos's Complaint.

## 2. Banuelos's Complaint

### a. Facts Found in Banuelos's Complaint

¶56 Her Complaint alleges: "From 2016 to January 23, 2020, all major institutional health care providers, like UW Health in Wisconsin and their business associates, like Ciox, were complying with the DHHS guidance and charging a cost-based fee, $6.50 in the vast majority of cases, upon receipt of a HITECH[8] electronic medical records request from the patient with the patient's lawyers designated to receive the records."[9]

¶57 "On January 23, 2020, a Federal District Court on the D.C. Circuit issued a Memorandum Opinion in [Ciox Health, LLC v. Azar, 435 F. Supp. 3d 30 (D.D.C. Jan. 2020)], indicating that the 2016 DHHS guidance document entitling patients to the cost-based fee when the medical records were directed to be received by a third party, like a law firm, was unenforceable."[10] After this federal court decision, UW Hospital and Ciox began informing patients who had requested electronic health care records under HITECH and designated receipt by a third-party that their requests would be fulfilled according to allowable

---

[8] HITECH is the acronym for Health Information Technology for Economic and Clinical Health Act.

[9] Complaint, ¶9.

[10] Id., ¶10.

state costs, not the earlier mandate in the DHHS guidance document.[11]

¶58 On February 27, 2020, Banuelos requested copies of her health care records in electronic format.[12] She directed that the copies be sent to her lawyers.[13] Ciox sent the requested health care records electronically to Banuelos's lawyers.[14] Ciox also included its invoice requesting payment of $109.96 to Ciox at "P.O. Box 409740, Atlanta, Georgia 30384-9740," with questions by email directed to "collections@cioxhealth.com."[15]

### b. The Applicable Law

¶59 Banuelos relies on Wis. Stat. § 146.83(3f)(b) for her claim against UW Hospital that she was charged excessive fees.[16] Section 146.83(3f)(b) provides in relevant part:

> (b) Except as provided in sub (1f), a health care provider may charge no more than the total of all of the following that apply for providing the copies requested under par. (a) . . . .

¶60 We have interpreted Wis. Stat. § 146.83(3f)(b) in a prior decision. Townsend, 399 Wis. 2d 599, ¶2. Past interpretations of a statute become part of our understanding of

---

[11] Id., ¶12.

[12] Id., ¶14.

[13] Id., ¶15.

[14] Id., ¶16.

[15] Id., ¶17; "Banuelos – Exhibit 3" (attached to the Complaint and attached to this dissent).

[16] Id., ¶22.

6

the meaning of the statute. Adams v. Northland Equip. Co., Inc., 2014 WI 79, ¶30, 356 Wis. 2d 529, 850 N.W.2d 272; State v. Soto, 2012 WI 93, ¶20, 343 Wis. 2d 43, 817 N.W.2d 848.

¶61  In Townsend, we had a claim similar to that set out in Banuelos's complaint, where ChartSwap provided and charged for medical records that had been requested from the health care provider, Milwaukee Radiologists. Townsend, 399 Wis. 2d 599, ¶4. Here, Banuelos's Complaint requested health care records from UW Hospital and Ciox provided the records and billed for payment of $109.96, directing that payment be made to Ciox.[17]

¶62  In Townsend, we concluded that under a plain meaning interpretation of Wis. Stat. § 146.81(1), "ChartSwap is not a health care provider." Id., ¶2. We also concluded that Wis. Stat. § 146.83(3f)(b) regulates only health care providers. Id. Therefore, because ChartSwap was not a health care provider and § 146.83(3f)(b) regulated only health care providers, § 146.83(3f)(b) did not regulate ChartSwap. Id.

¶63  In parallel with Townsend, Ciox is not a health care provider because it meets none of the identifications provided by Wis. Stat. § 146.81(1)(a)-(s). Because Ciox is not a health care provider, it is not subject to fee regulations in § 146.83(3f)(b). Id. Therefore, the payment Banuelos's attorneys made to Ciox does not come within subsec. (3f)(b). Smith confirms this conclusion as it explains:

---

[17] Id., ¶¶14, 16, 17.

> [P]laintiff's argument finds no support in the text of the statute. The statute does not impose liability on a person who is not a health care provider but who responds to records requests on behalf of a health care provider.

Smith, 380 F. Supp. 3d at 842.

¶64 This case differs from Townsend and Smith in that the health care provider, UW Hospital, was named as the defendant, rather than naming the entity that provided the records and charged for their provision. However, Banuelos's Complaint bases its alleged statutory violation on the Ciox bill and the payment to Ciox. The Complaint does not make a factual allegation that UW Hospital billed or collected anything in regard to the provision of Banuelos's health care records.

¶65 Banuelos's Complaint tries to avoid this problem by alleging "charges submitted by defendant, UW Hospital and Clinics Authority, through its business associate, Ciox, to the plaintiff, Beatriz Banuelos, are not permitted by Wisconsin Statutes § 146.83(3f)."[18] However, Banuelos cites no statutory language in § 146.83(3f) to support this legal conclusion.

¶66 Wisconsin Stat. § 146.83(3f)(b) regulates health care providers. It does not regulate business associates of health care providers. If the legislature chooses to cause health care providers to incur liability for acts of a business associate, that is a policy choice the legislature can make by amending the statute. However, as the statute is now written, it regulates only health care providers for charges that health care

---

[18] Id., ¶25.

providers impose. Townsend firmly sets aside Banuelos's claim because Ciox is not a health care provider and, as her Complaint alleges, Ciox charged and collected for the records.[19] Townsend, 399 Wis. 2d 599, ¶2; Smith, 380 F. Supp. 3d at 842.

¶67 The majority opinion never quotes or analyzes facts alleged in Banuelos's Complaint. Instead, it sets out facts that it creates to enable it to get to where it wants to go. For example, Banuelos's Complaint does not state that UW Hospital "transmitted . . . an invoice for $109.96" or made a "charge of $109.96" as the majority opinion states.[20] Instead, her Complaint alleges that Ciox made that charge, and it attaches the invoice from Ciox showing payment is due to Ciox, not to UW Hospital. See invoice copy attached to dissent.

¶68 Accordingly, because Banuelos's Complaint fails to state a claim against UW Hospital that comes within the plain meaning of Wis. Stat. § 146.83(3f)(b), her Complaint must be dismissed. Because the majority opinion does not review facts actually alleged in the Complaint, and instead rewrites § 146.83(3f)(b) to make a policy choice that belongs to the legislature, I respectfully dissent.

III. CONCLUSION

---

[19] A health care provider is defined in Wis. Stat. § 146.81(1). Ciox does not fit within any of those persons listed in subsec. (1)(a)-(s), even when described as a "business associate" of a health care provider.

[20] Majority op., ¶¶8, 9.

9

¶69 I conclude that Banuelos's Complaint fails to state a claim against UW Hospital because it alleges that Ciox, who is not a health care provider, supplied the health care records and charged $109.96 for them, payable to Ciox.[21] Wisconsin Stat. § 146.83(3f)(b), invoked and relied on by the majority opinion, does not regulate persons who are not health care providers. Townsend, 399 Wis. 2d 599, ¶14; Smith, 380 F. Supp. 3d at 842.

¶70 Permitting a claim against UW Hospital for charges made by Ciox for the provision of health care records is not addressed in Wis. Stat. § 146.83(3f)(b). Whether to permit a claim against a health care provider for charges made by a third party for the provision of health care records, whether the third party is denominated a "conduit," a "business associate" or something else, is a policy choice better left to the legislature. The charges Banuelos's Complaint alleges Ciox made here are not contrary to § 146.83(3f)(b); therefore, the Complaint fails to state a claim against UW Hospital and must be dismissed.

¶71 The majority opinion ignores material facts that are alleged in Banuelos's Complaint and the effect of Townsend on the pending motion to dismiss, given those facts. Accordingly, I respectfully dissent.

¶72 Although I conclude the Complaint should be dismissed for the reasons stated above, I agree with Justice Rebecca Grassl Bradley's statutory interpretation of Wis. Stat.

---

[21] Id., ¶¶16, 17; Banuelos – Exhibit 3 (attached to the Complaint).

§ 146.83(3f) as applied to "health care providers."  Therefore, I join her dissent.

**Ciox Health**
P.O. Box 409740
Atlanta, Georgia 30384-9740
Fed Tax ID :
1-800-367-1500

**CIOX**
HEALTH
**INVOICE**

Invoice #:    **0301705939**
Date:    **03/18/2020**
Customer #:    **657492**

| Ship to: | Bill to: | Records from: |
|---|---|---|
| BEATRIZ M BANUELOS<br>HABUSH HABUSH AND ROTTIER SC<br>150 E GILMAN ST<br>STE 2000<br>MADISON,WI 53703-1481 | BEATRIZ M BANUELOS<br>HABUSH HABUSH AND ROTTIER SC<br>150 E GILMAN ST<br>STE 2000<br>MADISON,WI 53703-1481 | UW HEALTH<br>8501 EXCELSIOR DR<br>MADISON,WI 53717-1939 |

**Requested By:**    HABUSH HABUSH AND ROTTIER SC    **DOB :**    04/10/1968
**Patient Name:**    BANUELOS BEATRIZ

| Description | Quantity | Unit Price | Amount |
|---|---|---|---|
| Basic Fee | | | 0.00 |
| Retrieval Fee | | | 0.00 |
| Per Page Copy (Paper) 4 | 25 | 1.14 | 28.50 |
| Per Page Copy (Paper) 2 | 50 | 0.56 | 28.00 |
| Per Page Copy (Paper) 1 | 94 | 0.34 | 31.96 |
| Per Page Copy (Paper) 3 | 25 | 0.86 | 21.50 |
| Subtotal | | | 109.96 |
| Sales Tax | | | 0.00 |
| Invoice Total | | | 109.96 |
| Balance Due | | | 109.96 |

**Terms: Net 30 days**    **Please remit this amount : $109.96(USD)**

- - - - - - - - - - - - - - - - - - - - ✂ - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Ciox Health**
P.O. Box 409740
Atlanta, Georgia 30384-9740
Fed Tax ID
1-800-367-1500

Get future medical records as soon as they are processed,
by signing up for secure electronic delivery.
Register at: https://edelivery.cioxhealth.com

| Invoice #:  **0301705939** |
|---|
| Check #_____ |
| Payment Amount $_____ |

## Please return stub with payment.

Please include invoice number on check.
To pay invoice online, please go to https://paycioxhealth.com/pay/ or call 800-367-1500.
Email questions to collections@cioxhealth.com.

Banuelos – Exhibit 3

12

¶73 REBECCA GRASSL BRADLEY, J. *(dissenting).* Beatriz Banuelos requested electronic health care records from her health care provider, University of Wisconsin Hospitals and Clinics Authority (UW Health), which provided the records through Ciox Health, LLC (Ciox), a service provider. Ciox charged Banuelos $109.96 for providing the requested records. Banuelos sued UW Health, alleging it had no statutory authority under Wis. Stat. § 146.83(3f) (2021-22)[1] to charge for the provision of electronic records. Misinterpreting the statutory text, the majority agrees with Banuelos and concludes Wis. Stat. § 146.83(3f) prohibits such charges. The majority is wrong. Wisconsin Stat. § 146.83(3f) is silent as to the amount health care providers may charge for the provision of electronic health care records. The absence of any state regulation of such fees means providers retain the freedom to charge them, subject only to federal law.

## I. The Statutory Text

> [T]he construction must be made upon the entire instrument, and not merely upon disjointed parts of it.

Herbert Broom, A Selection of Legal Maxims 440 (Joseph Gerald Pease & Herbert Chitty eds., 8th ed. 1911).

¶74 The majority misconstrues Wis. Stat. § 146.83(3f) as an authorization of private economic activity, namely, charging for the provision of health care records. Like the court of

---

[1] All subsequent references to the Wisconsin Statutes are to the 2021-22 version unless otherwise indicated.

1

appeals, the majority concludes: "[§ 146.83(3f)] does not permit charges for copies of electronic records because the statute does not enumerate electronic formats as one of the three formats for which a health care provider may charge a fee," and "there is no provision in the text permitting the charge of fees for copies in formats for which the legislature did not expressly authorize a fee."  Majority op. ¶¶24, 22.  In the absence of constitutionally legitimate regulation, people do not require the State's permission to engage in economic activity. Because the applicable statute does not impose a statutory cap on charges for providing electronic health records, the provider may charge whatever it chooses——subject to federal law, which does impose a limit.  42 U.S.C. § 17935(e)(3) (2012).

¶75 Wisconsin Stat. § 146.83(3f) requires health care providers to provide health care records upon request.  Wis. Stat. § 146.83(3f)(a).  The statute imposes caps on the fees providers may charge for providing records in particular forms including paper, microfiche, and x-ray prints.  Wis. Stat. § 146.83(3f)(b).  For reference, the statute provides:

> (a)  [I]f a person requests copies of a patient's health care records, provides informed consent, and pays the applicable fees under par. (b), the health care provider shall provide the person making the request copies of the requested records.

> (b)  [A] health care provider may charge no more than the total of all of the following that apply for providing the copies requested under par. (a):

> 1.  For paper copies: $1 per page for the first 25 pages; 75 cents per page for pages 26 to 50; 50 cents per page for pages 51 to 100;

2

and 30 cents per page for pages 101 and above.

2.  For microfiche or microfilm copies, $1.50 per page.

3.  For a print of an X-ray, $10 per image.

4.  If the requester is not the patient or a person authorized by the patient, for certification of copies, a single $8 charge.

5.  If the requester is not the patient or a person authorized by the patient, a single retrieval fee of $20 for all copies requested.

6.  Actual shipping costs and any applicable taxes.

Paragraphs (a) and (b) must be read as a whole, and in the context of surrounding statutes. State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110.

¶76 Under paragraph (a), health care providers "shall" provide copies of a patient's health care records to each person who requests them, with the patient's informed consent. The word "shall" is mandatory. Heritage Farms, Inc. v. Markel 8 Ins. Co. (Heritage Farms II), 2012 WI 26, ¶32, 339 Wis. 2d 125, 810 N.W.2d 465 ("[W]e presume that the word 'shall' is mandatory"); Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 112 (2012) (Mandatory/Permissive Canon) ("The traditional, commonly repeated rule is that shall is mandatory and may is permissive"). Compliance with this provision necessarily imposes costs on the provider. In 2011, for instance, the average request for health care records "total[ed] 61 pages in length" and cost providers "an average"

3

of \$62.22 in "direct processing." Legislative Fiscal Bureau, Joint Fin. Cmte., Paper #367 (May 18, 2011) at 6. The statute requires health care providers to shoulder a substantial cost; the total fee that can be charged under paragraph (b) for an average request of 61 pages equals only \$36.35. Id. The statutory scheme reflects a legislative balancing of patients' interest in guaranteed and affordable access to their health care records and the health care provider's interest in recouping the costs of providing them.

¶77 Nothing in paragraph (a) requires health care providers to give requesters any health care records in electronic form. The statutory limits on fees under paragraph (b) apply only to requests for the form of records expressly listed in paragraph (b)(1-6). Health care records in electronic form are not listed in paragraph (b); therefore, electronic health care records are not subject to any cap on fees the provider may charge. Requests for electronic health care records fall beyond the scope of § 146.83(3f) altogether because records in electronic form are not mentioned at all. The majority converts the legislature's silence with regard to electronic health care records into a mandate that health care providers provide them at no charge. Had the legislature wished to impose such an obligation on health care providers, it would have done so explicitly. "[T]he legislature knows how to write a statute accomplishing the work" the majority would have § 146.83(3f) perform. Teigen v. Wisconsin Elections Comm'n,

4

2022 WI 64, ¶49, 403 Wis. 2d 607, 976 N.W.2d 519 (citing State v. Yakich, 2022 WI 8, ¶26, 400 Wis. 2d 549, 970 N.W.2d 12).

¶78 Although the majority claims both paragraphs (a) and (b) are "important" to its analysis and purports to read those paragraphs in their proper context, the majority does not consider Wis. Stat. § 146.83(3f) as a whole text. Majority op., ¶¶17, 18. The majority commits an interpretive fault perhaps "more common" than any other. Scalia & Garner, Reading Law 167. As we have stated in countless cases, statutory text may not be read in isolation. See, e.g., State ex rel. Zignego v. Wisconsin Elections Comm'n, 2021 WI 32, ¶12, 396 Wis. 2d 391, 957 N.W.2d 208 ("When interpreting statutes, we focus primarily on the language of the statute, looking as well to its statutory context and structure"); see also Stroede v. Soc'y Ins. & R.R. Station, LLC, 2021 WI 43, ¶11, 397 Wis. 2d 17, 959 N.W.2d 305 ("[Statutory] language is 'interpreted in the context in which it is used, not in isolation but as part of a whole.'") (quoting Kalal, 271 Wis. 2d 633, ¶46); Piper v. Jones Dairy Farm, 2020 WI 28, ¶27, 390 Wis. 2d 762, 940 N.W.2d 701 ("As with statutory interpretation, we interpret the language of a regulation in the context in which it is used, 'not in isolation but as part of a whole; in relation to the language of surrounding or closely-related [regulations]'") (citing Williams v. Integrated Cmty. Servs., Inc., 2007 WI App 159, ¶12, 303 Wis. 2d 697, 736 N.W.2d

226) (quoting Kalal, 271 Wis. 2d 633, ¶46).[2] The majority opinion represents another failure to apply the whole-text canon correctly. See, e.g., Zignego, 2021 WI 32, ¶52 (Rebecca Grassl Bradley, J., dissenting).

¶79 The majority fails to read paragraph (b) in the context of paragraph (a). It misconstrues the portion of paragraph (b) under which health care providers "may charge no more than the total of all of the following that apply for providing the copies requested." Majority op., ¶22 (quoting Wis. Stat. § 146.83(3f)(b)). The majority translates this language to mean "a health care provider may charge up to the rates prescribed in the statute for furnishing copies of paper records, microfiche or microfilm records, or x-rays." Id. Because the majority "observe[s] that there is no provision in the text permitting the charge of fees for copies in formats for which the legislature did not expressly authorize a fee," it concludes Wis. Stat. § 146.83(3f) "does not permit charges for copies of electronic records[.]" Id., ¶24 (emphasis added). The majority badly misreads the statute.

¶80 Interpreting Wis. Stat. § 146.83(3f) as an authorization of certain charges, the majority incorrectly concludes paragraph (b) applies to all requests for health care

---

[2] The United States Supreme Court has espoused the same principle. See Panama Ref. Co. v. Ryan, 293 U.S. 388, 439 (1935) (Cardozo, J., dissenting) ("[T]he meaning of a statute is to be looked for, not in any single section, but in all the parts together and in their relation to the end in view"); Davis v. Michigan Dep't of Treasury, 489 U.S. 803, 809 (1989) ("[S]tatutory language cannot be construed in a vacuum").

records, whatever the form. As explained above, § 146.83(3f) does not authorize any activity; rather, it limits the amounts health care providers may charge for delivering only those records requested in the particular forms listed in paragraph (b). Paragraph (b) regulates economic activity by capping fees for records requested in particular formats, and electronic records are not among them. Because this statute does not apply to electronic health care records, the fees charged by health care providers for their provision have no limit under § 146.83(3f).

¶81 Because the majority "observe[s] that there is no provision in the text permitting the charge of fees for copies in formats for which the legislature did not expressly authorize a fee," it concludes Wis. Stat. § 146.83(3f) "does not permit charges for copies of electronic records[.]" Majority op., ¶¶22, 24. The majority converts statutory silence into a statutory prohibition, at the expense of fundamental freedom. As amicus Wisconsin Civil Justice Council, Inc. put it, "[i]n a free society, private behavior is allowed unless prohibited by law. Free people do not need the government's permission before engaging in private conduct." Wis. Civ. Just. Council Br. at 6.

## II. First Principles

¶82 Liberty is not <u>provided</u> by government; liberty <u>preexists</u> government. It is not a gift from the sovereign; it is our natural birthright. Fixed. Innate. Unalienable.

<u>Patel v. Texas Dep't of Licensing & Regul.</u>, 469 S.W.3d 69, 92-93 (Tex. 2015) (Willet, J., concurring). The Founders fought a

7

revolution to reclaim the people's liberty, and established our republican form of government to secure this birthright freedom:

> We hold these truths to be self-evident, that all Men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty, and the Pursuit of Happiness— That to secure these Rights, Governments are instituted among Men, deriving their just Powers from the Consent of the Governed.

The Declaration of Independence para. 2 (U.S. 1776) (emphasis added). The Wisconsin Constitution enshrines liberty in its very first provision:

> All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted, deriving their just powers from the consent of the governed.

Wis. Const. art. I, § 1 (emphasis added). "Too much dignity cannot well be given to that declaration." State v. Redmon, 134 Wis. 89, 101, 114 N.W. 137 (1907). "An inherent right to liberty means all people are born with it; the government does not bestow it upon us and it may not infringe it." Porter v. State, 2018 WI 79, ¶52, 382 Wis. 2d 697, 913 N.W.2d 842 (Rebecca Grassl Bradley & Kelly, JJ., dissenting).

¶83 John Locke, whose works influenced the Framers, built his theories of government on the immutable principle that all "are born free," and therefore, "[a]ll government is limited in its powers and exists only by the consent of the governed." Robert A. Goldwin, John Locke in History of Political Philosophy 476 (Leo Strauss & Joseph Cropsey, eds., 3d ed. 1987).

> The power a man has in the state of nature "of doing whatsoever he thought fit for the preservation of

8

himself and the rest of mankind, he gives up," to a significant extent, "to be regulated <u>by laws made by the society</u>."

<u>McDonald v. City of Chicago, Ill.</u>, 561 U.S. 742, 892 (2010) (Stevens, J., dissenting) (quoting John Locke, <u>Second Treatise of Civil Government</u> § 129, 64 (J. Gough ed., 1947)) (emphasis added). "Once a government is formed, however, it cannot be given 'a power to destroy that which every one designs to secure'; it cannot legitimately 'endeavour to take away, and destroy the property of the people,' or exercise 'an absolute power over [their] lives, liberties, and estates.'" <u>Carpenter v. United States</u>, 585 U.S. __, 138 S. Ct. 2206, 2239 (2018) (Thomas, J., dissenting) (quoting Second Treatise of Civil Government § 222 (1690)). If the legislature will restrict liberty, it must do so expressly, in written laws. The government possesses no authority to bind the people with silence.

¶84 The majority flips this first principle on its head, equating silence with prohibition, and implying we are restrained until made free. The majority's extraordinary misunderstanding of basic founding principles is anathema to our republican form of government, under which the people consent to be governed by written law, not haunted by specters:

> The liberty of man, in society, is to be under no other legislative power, but that established, by consent, in the commonwealth; nor under the dominion of any will, or restraint of any law, <u>but what that legislative shall enact</u>, according to the trust put in it.

John Locke, <u>Two Treatises on Government</u> 205 (J. Bumpus ed. 1821) (emphasis added).

9

> [A] system of laws, is alone calculated to maintain civil liberty, which leaves the subject entire master of his own conduct, <u>except in those points wherein the public good requires some direction or restraint.</u>

1 W. Blackstone, Commentaries on the Laws of England, 121-122 (1769) (emphasis added). American liberty means the people may order their lives as they wish, subject only to the restraints imposed by written law enacted with the consent of the governed——through their elected legislative representatives:

> By liberty we mean the power, which a man has to act as he thinks fit, <u>where no law restrains him</u>; it may therefore be called a mans right over his own actions.

1 T. Rutherforth, <u>Institutes of Natural Law</u> 146 (1754) (emphasis added). The people consent to be governed by written law, but beyond those restraints they retain absolute freedom:

> [I]n Society, every Man parts with a Small Share of his <u>natural</u> Liberty, or lodges it in the publick Stock, that he may possess the <u>Remainder without Controul</u>.

Boston Gazette and Country Journal, No. 58, May 10, 1756, p. 1 (emphasis added).

¶85 The majority transforms legislative silence into an unwritten, omnipresent restraint. The logical extension of this remarkable misconception of democracy consigns the people into the servitude of their master——government——a regime overthrown in America nearly 250 years ago. According to the majority, unless the master expressly gives the people permission to do something, they may not act. This turns democracy upside down. It is tyranny.

¶86 To the extent the legislature is silent, the people retain their inherent, unfettered freedom. Wisconsin Stat.

10

§ 146.83(3f) says nothing about charges for the provision of electronic health care records.  In the absence of state regulation of such fees, health care providers retain the freedom to charge whatever they see fit, subject to any limits imposed by federal law.

### III.  Statutory History

¶87  The history of Wis. Stat. § 146.83(3f) reinforces this plain meaning analysis.  "Statutory history, which involves comparing the statute with its prior versions, may also be used as part of plain meaning analysis."  Brey v. State Farm Mut. Auto. Ins. Co., 2022 WI 7, ¶20, 400 Wis. 2d 417, 970 N.W.2d 1 (internal quotation marks omitted) (quoting James v. Heinrich, 2021 WI 58, ¶26, 397 Wis. 2d 516, 960 N.W.2d 350).  As the majority notes, the revisions made to § 146.83 (2009–10) in 2011 are most relevant to resolving this dispute.  These revisions must be interpreted in light of the changes to federal law that occurred shortly before § 146.83 was amended.

¶88 In 2009, two years before the legislature revised § 146.83, the United States Congress passed the Health Information Technology for Economic and Clinical Health (HITECH) Act as part of the American Recovery and Reinvestment Act of 2009 (ARRA), an omnibus stimulus bill ostensibly passed to allay the nation's financial crisis.  American Recovery and Reinvestment Act of 2009, PL 11-5, 123 Stat. 115, 226 (Feb. 17, 2009).  Taking effect in February 2010, the HITECH Act sought to promote a "nationwide health information technology

11

infrastructure" allowing "for the electronic use and exchange of information[.]" Id. at 230.

¶89 Prior to the passage of the HITECH Act "many technical barriers still exist[ed]" preventing the widespread adoption of electronic health record systems. Kalle Deyette, Hitech Act: Building an Infrastructure for Health Information Organizations and A New Health Care Delivery System, 8 St. Louis U.J. Health L. & Pol'y 375, 386 (2015). Such systems were especially uncommon "within small practices" because no software "trusted by providers" and capable of "meeting [small practices'] needs" existed. Id. By and large, designers of electronic record systems "focused on the needs of large provider systems and did not address the needs of small, office-based practices." Id. at 387. "In fact, some of the larger [electronic health records] systems, such as EPIC, [would] not license to small community hospitals, claiming these hospitals may not [have had] the resources to run the system properly." Id. This left small hospitals with only one option: "contracting with larger hospitals to sublicense and facilitate its [electronic health record] system." Id. The problems extended beyond small practices. Id. Medium practices also "implemented expensive [electronic health records systems] that did not perform critical functions of their practice, such as clinical management, and did not address their patients' diverse needs, such as mental health issues." Id. Throughout the country, there was "an overall lack of knowledge, choice, and product variation in [electronic health records] systems, which [] left

12

providers with expensive systems that [were] resource-intensive" and frequently incapable of fulfilling "the actual objectives of [electronic health records systems]." Id.

¶90 The HITECH Act allocated hundreds of millions of dollars "to support regional or sub-national efforts to implement" electronic "health information exchanges." Id. at 405 (2015). The HITECH Act's ultimate goal was to enable "each person in the United States" to obtain accurate, private, and secure electronic health records. 123 Stat. 115 at 231.

¶91 To effectuate that goal, Congress enacted mechanisms for individuals to obtain and review their health records directly. 123 Stat. 115 at 266, 268. The HITECH Act provides:

> (e) ACCESS TO CERTAIN INFORMATION IN ELECTRONIC FORMAT.—In applying section 164.524 of title 45, Code of Federal Regulations, in the case that a covered entity uses or maintains an electronic health record with respect to protected health information of an individual[.]
>
> (1) [T]he individual shall have a right to obtain from such covered entity a copy of such information in an electronic format and, if the individual chooses, to direct the covered entity to transmit such copy directly to an entity or person designated by the individual, provided that any such choice is clear, conspicuous, and specific[.]

42 U.S.C. § 17935(e)(1) (2012). In addition to establishing the right to review an individual's health records, Congress capped allowable charges. 123 Stat 115, 268 (Feb. 17, 2009). Under the HITECH Act, a health care provider may, when asked to provide electronic records, charge no more than its "labor costs in responding to the request":

(3)  [A]ny fee that the covered entity may impose for providing such individual with a copy of such information (or a summary or explanation of such information) if such copy (or summary or explanation) is in an electronic form shall not be greater than the entity's labor costs in responding to the request for the copy (or summary or explanation).

42 U.S.C. § 17935(e)(3) (2012).

¶92 Against this backdrop, the Wisconsin legislature revised Wis. Stat. § 146.83 in 2011.  For reference, below is a side-by-side comparison of the relevant provisions of § 146.83 as they appeared both prior to and after the 2011 amendments.[3] On the left side is the (2009-10) version of the statute, and on the right are the changes the legislature made.  The struck through portions signify legislative deletions.  The underlined portions signify legislative additions.  All revisions made in 2011 remain in effect.

| Wis. Stat. § 146.83(1h)(b) (2009-10) | Wis. Stat. § 146.83(3f)(b) (2021-22) |
|---|---|
| (b)  . . . [A] health care provider may charge no more than the total of all of the following that apply for providing copies requested under par. (a):<br><br>1.  For paper copies, 35 cents per page. | (b)  . . . [A] health care provider may charge no more than the total of all of the following that apply for providing copies requested under par. (a):<br><br>1.  For paper copies, ~~35 cents per page.~~: <u>$1 per page for</u> |

---

[3] The court of appeals provided a similar side-by-side representation of these changes, but its chart, at least as it appears on Westlaw, is inaccurate.  The statutory headings are flipped, but the statutory text is not, causing the table to show the (2019-20) version under the (2009-10) version, and vice-versa.

14

|  |  |
|---|---|
|  | the first 25 pages; 75 cents per page for pages 26 to 50; 50 cents per page for pages 51 to 100; and 30 cents per page for pages 101 and above. |
| 2. For microfiche or microfilm copies, $1.25 per page. | 2. For microfiche or microfilm copies, ~~$1.25~~ $1.50 per page. |
| 3. For a print of an X-ray, $10 per image. | 3. For a print of an X-ray, $10 per image. |
| 3m. For providing copies in digital or electronic format, a charge for all copies requested. | ~~3m. For providing copies in digital or electronic format, a charge for all copies requested.~~ |
| 4. For certification of copies, $5. | ~~4. For certification of copies, $5.~~ |
| 5. For processing and handling, a single $15 charge for all copies requested. | ~~5. For processing and handling, a single $15 charge for all copies requested.~~ |
|  | 4. If the requester is not the patient or a person authorized by the patient, for certification of copies, a single $8 charge. |
|  | 5. If the requester is not the patient or a person authorized by the patient, a single retrieval fee of $20 for all copies requested. |
| 6. Actual shipping costs. | 6. Actual shipping costs. |
| 7. If the requester requests delivery of the copies within 7 or fewer days after making a request for | ~~7. If the requester requests delivery of the copies within 7 or fewer days after making a request for copies, and the health~~ |

15

| copies, and the health care provider delivers the copies within that time, a fee equal to 10 percent of the total fees that may be charged under subds. 1. to 6. | ~~care provider delivers the copies within that time, a fee equal to 10 percent of the total fees that may be charged under subds. 1. to 6.~~ |
|---|---|

¶93  The  2009-10 version of Wis. Stat. § 146.83 specified no cap on fees health care providers could charge for the provision of electronic records.  Originally, the legislature imposed a $5 cap on such charges in § 146.83(1h)(b)3m. (2009-10).  Governor Jim Doyle, Veto Message § D.11, at 37 (June 29, 2009) (responding to Assembly Bill 75 (2009)).  Using his line-item veto power, then-Governor Doyle removed that cap from the statute.  Id.  The enacted law required health care providers to provide electronic records upon request but without any limit on the fees they could charge.

¶94  As  shown  above,  the  legislature  eventually  removed subsection 3m. from Wis. Stat. § 146.83. Currently, the statute contains  no  reference  to  electronic  health  care  records whatsoever.  The HITECH Act overrode Wisconsin's limitless fee provision, obviating the need to address charges for electronic health  care  records.  Removing  the  language  regarding  charges for such records from the statute eliminated any tension between Wisconsin law and federal law by conforming state statutes to the federal fee cap.  From this, the majority reads into the statute  an  implicit  prohibition  on  charging  for  electronic health care records at all.

¶95 Conspicuously missing from the majority opinion, as well  as  the  court  of  appeals  opinion,  is  any  meaningful

16

discussion of the context in which the 2011 legislative amendments occurred. The majority scarcely mentions the HITECH Act at all.[4] The majority's entire analysis rests on the absence of legislative "permission" for health care providers to charge for the provision of electronic health records. Of course, the legislature hasn't given lawyers, plumbers, or electricians permission to charge for their services either, despite the existence of laws governing those trades. It would be absurd to suggest any provider of services or goods must provide them for free, but the majority doesn't explain why it decrees that health care providers must do so.

## IV. Conclusion

¶96 Our system of ordered liberty under the rule of law has been analogized to the Sears Tower:[5] although inside it people move freely, their movement is necessarily restrained by the building's structure——its walls, its floors, its elevators. See Randy Barnett, The Structure of Liberty: Justice and the Rule of Law 1–3 (1998). The majority fills a statute's silence with a prohibition, surrounding economic actors——in this case, health care providers——with invisible restraints on their freedom. The majority establishes a dangerous precedent that violates first principles and imperils liberty. People who live

---

[4] See Majority op., ¶28 n.11.

[5] "Sears Tower" refers to the 110 story skyscraper in Chicago now named Willis Tower. The Making of an American Icon, Willis Tower, https://www.willistower.com/about (last visited March 11, 2023).

17

in freedom may not be transformed into mimes bound by invisible chains. In the absence of written law, we are free. Because the fee caps imposed in Wis. Stat. § 146.83(3f) do not encompass electronic health care records, health care providers are free to charge whatever they choose, subject only to federal law. I respectfully dissent.

¶97 I am authorized to state that Chief Justice ANNETTE KINGSLAND ZIEGLER and Justice PATIENCE DRAKE ROGGENSACK join this dissent.